## Commonwealth v. Fruehauf Trailer Co.

*George W. Keitel,* for Commonwealth.

*Hull, Leiby & Metzger,* for defendant.

NEELY, J., July 29, 1957.—This is an appeal from the action of the Board of Finance and Revenue in refusing to resettle, on defendant's petition for re-

view, its franchise tax for the year 1953 imposed under sections 20 and 21 of the Act of June 1, 1889, P. L. 420, as amended, 72 PS §§1901, 1871. Under the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §688, the parties have entered into a stipulation for the trial of this case without a jury.

Settlement of the 1953 franchise tax against defendant was made by the Department of Revenue on April 9, 1956, approved by the Auditor General on April 13, 1956, and notice of settlement was mailed to the taxpayer on May 14, 1956. When defendant filed its 1953 franchise tax report under a 60-day extension on May 15, 1954, it computed and paid tax in the amount of $4,590.99. The tax settled against defendant by the taxing departments was made in the amount of $5,788.12, which sum has been paid in full.

This appeal does not challenge the amount of the settlement by the fiscal officers, but avers that the settlement is invalid because it was not made before December 31, 1954, as defendant contends is required by section 801(b) of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §801(b). The appeal prays that this court "issue an Order or Decree in favor of the defendant, by striking off the illegal Settlement hereby appealed from, and for such other relief as may be proper under the circumstances, and order a credit established for overpayment of the tax in excess of that computed and paid by appellant on the face of its 1953 Franchise Tax Report." We are asked by our order to reinstate defendant's computation of the tax in the sum of $4,590.99.

### Findings of Fact

1. Fruehauf Trailer Company, defendant, is a corporation of the State of Michigan doing business in the Commonwealth of Pennsylvania. The principal

office of defendant is 10940 Harper Avenue, Detroit 32, Mich.

2. Under an extension requested by defendant and duly granted by Department of Revenue officials, defendant filed its 1953 franchise tax report in the Department of Revenue on May 15, 1954.

3. On that franchise tax report, defendant computed its 1953 franchise tax liability to be $4,590.99. On March 8, 1954, defendant paid $4,000 on account, and on May 11, 1954, it paid an additional $590.99, so that the full amount of the tax, as computed by defendant, was paid on or before May 15, 1954.

4. During the calendar year 1954, the taxing departments took the following action with respect to defendant's 1952 franchise tax report: The franchise tax was originally settled on May 5, 1954, and a certified copy mailed to defendant on May 20, 1954; on June 25, 1954, defendant filed a petition for resettlement, and on August 13, 1954, defendant filed an amended petition for resettlement, which petitions were granted in part on a resettlement issued by the taxing officers under date of September 22, 1954, and mailed to defendant on September 29, 1954. No petition for review or appeal for 1952 was filed.

5. The settlement of 1953 franchise tax against defendant was instituted by the Department of Revenue on April 9, 1956, and approved by the Auditor General on April 13, 1956. The notice of this settlement was mailed to defendant under date of May 14, 1956. In that settlement, defendant's franchise tax computation was not adopted, and the taxing departments settled the franchise tax at $5,788.12. This was a tax increase of $1,197.13 over the amount computed by defendant. This entire amount of tax has been paid. However, an interest settlement of $83.33 has not been paid.

6. On August 6, 1956, defendant filed its petition for resettlement, objecting to the delay of the taxing departments in issuing the 1953 franchise tax settlement. This petition was refused on November 19, 1956.

7. On December 3, 1956, defendant filed with the Board of Finance and Revenue its petition for review of the 1953 settlement, raising the same issue, and this was refused on January 18, 1957.

8. On January 24, 1957, defendant filed its appeal with this court.

9. It is the practice of the taxing departments to pair tax returns being settled for any given year with the returns and settlements for the previous year, so that in accordance with the practice of the departments, the 1953 franchise taxes, when being considered by the taxing officers for settlement, would be paired with the 1952 franchise tax settlements.

10. The 1952 franchise tax return as resettled contained information pertinent and important to the settlement of the 1953 franchise tax, and pairing of the company's returns for these two years was important for the purpose of making appropriate comparisons.

11. Since notice of the 1952 franchise tax resettlement was not mailed until September 29, 1954, the process of comparing the two settlements could not reasonably have been accomplished prior to that date.

12. Even though under the practice of at least one of the taxing departments, the Auditor General, the pairing process could have been begun immediately after September 29, 1954, there was nevertheless a period of 60 days from that date in which defendant could have filed a petition for review of the 1952 resettlement with the Board of Finance and Revenue. For purposes of comparison, then, the 1952 franchise

tax resettlement was not finally administratively established until the expiration of this 60-day period.

13. A report of change of corporate net income for the years 1947 and 1948 was due to be filed with the Department of Revenue on or before September 27, 1953, which date was 30 days after defendant had received final notice of Federal change from the Federal Bureau of Internal Revenue.

14. It was important that the fiscal officers be in possession of such report of change for purposes of settling the 1953 franchise tax. This change of income, as determined by the Commissioner of Internal Revenue, affects the earnings as reported by the taxpayer on its franchise tax return.

15. Defendant's 1953 franchise tax was tentatively settled as of December 8, 1955, and on March 7, 1956, the Department of Revenue of this Commonwealth made inquiry of defendant concerning any report of change as a result of Federal examinations of defendant's record.

16. Defendant by a communication dated March 13, 1956, requested 30 days in which to determine whether or not there had been any such change of income for the years 1947 and 1948 and to make a report thereon to the said Department of Revenue.

17. The report of Federal change of 1947 and 1948 income was filed with the Department of Revenue on October 15, 1956, and showed an increase in defendant's corporate net income for both years and an increase in the total corporate net income tax for these two years of $1,078.03.

## Discussion

It is important in this case to have a clear understanding of the statutory procedures for making corporate tax settlements by the fiscal officers of the Commonwealth. The Administrative Code of April

9, 1929, P. L. 177, 71 PS §51, created the two taxing departments and provided in section 1001 of that code, 71 PS §311, that the Auditor General, and in section 2501, 71 PS §661, that the Department of Revenue should exercise their duties in accordance with the provisions of The Fiscal Code.

Corporate tax settlements are made by the Department of Revenue, subject to the approval of the Auditor General, under the provisions of section 1001 of The Fiscal Code, 72 PS §1001. It is expressly provided in section 202($d$) of The Fiscal Code, 72 PS §202($d$), that the Department of Revenue shall have the power to settle and collect franchise taxes. And it is provided in section 802($b$), 72 PS §802($b$), that all settlements shall be subject to audit and approval by the Department of the Auditor General.

Under section 1102 of The Fiscal Code, 72 PS §1102, the taxpayer, within 90 days of the mailing of notice of settlement, may file with the department which made the settlement, the Department of Revenue in this case, petition for resettlement, and under section 1103, 72 PS §1103, within 60 days after the date of mailing such notice, the taxpayer "may, by petition, request the Board of Finance and Revenue to review such action."

Section 801($b$) of The Fiscal Code, 72 PS §801($b$), makes provision as to when the tax settlements shall be made and reads as follows:

"All such settlements shall, as far as possible, be so made that notice thereof may reach the taxpayer before the end of the year succeeding the year for which the tax or bonus report or return was made or ought to have been made."

Defendant contends that under that section the settlement for the 1953 franchise tax should have been mailed to defendant by December 31, 1954, and relies

on the decision of this court, Kreider, J., in Commonwealth v. Allied Building Credits, Inc., 65 Dauph. 401 (1953), 67 Dauph. 332 (1955), affirmed by the Supreme Court in 385 Pa. 370 (1956).

The Allied Building Credits case arose under a somewhat similar provision of the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as amended, 72 PS §3420h(a). We must not only consider the construction placed upon the pertinent provisions of the Corporate Net Income Tax Act by this court and the Supreme Court, but also bear in mind the fact that in the Allied Building Credits case ". . . the Commonwealth agreed there was no reason why the settlement could not have been made within one year, . . .": Commonwealth v. Allied Building Credits, Inc., 67 Dauph. 332, supra, at page 336. Section 8(a) of the Corporate Net Income Tax Act of 1935, as amended, 72 PS §3420h, subparagraph (a), provides as follows:

"All taxes due under this act shall be settled by the department, and such settlement shall be subject to audit and approval by the Department of the Auditor General, and shall, so far as possible, be made so that notice thereof may reach the taxpayer before the end of a year after the tax report was required to be made."

The Commonwealth stipulated that there was no reason why the tax in question in the Allied Building Credits case could not have been promptly settled and without any extension of time. We quote from the cogent language of Judge Kreider, 65 Dauph. 401, supra, 407, 408, which was adopted by Mr. Justice Chidsey in 385 Pa. 370, supra, at pages 377, 378:

" 'From this analysis it is apparent that the term as used in the Act would carry with it the notion of "reasonableness" or "within reason". This relative use of the term suggests that there are conditions under which *it would be unreasonable to require the*

*Department of Revenue to act within the required time,* i.e., circumstances wherein the department would be unable to act, or where, even though able to act, it was under some disability whereby the required acts *could not be accomplished efficiently and properly.* The inclusion of the phrase "so far as possible" indicates an intent on the part of the Legislature *that the provision is not mandatory upon the Department of Revenue.* It recognizes that the duty placed on the department to act within one year is not absolute and immutable, saying, in effect, there may be circumstances present which, if proven, would allow a settlement of the taxpayer's account to be made after the one (1) year period has elapsed. What would constitute sufficient cause to allow a settlement to be made after the one (1) year period has expired *is a question that would have to be determined in each case upon its own particular facts.'*" (Italics supplied.)

The Allied Building Credits case involved the construction to be placed on the words "so far as possible" in section 8(a) of the Corporate Net Income Tax Act. We are here construing section 801(b) of The Fiscal Code which uses the phrase "as far as possible." The meaning of the language in the two sections is the same and, therefore, the construction which we place upon this section of The Fiscal Code must be the same as the construction which has been placed on section 8(a) of the Corporate Net Income Tax Act. We think, then, in accordance with the determination of this court as affirmed by the Supreme Court in the Allied Building Credits case, that under section 801(b) of The Fiscal Code there is not an immutable duty to settle taxes before the end of the succeeding year for which the tax return was made (in this case December 31, 1954).

The Department of Revenue was required to act and to settle the tax before that year end, if that could

reasonably be done. And the department would be justified in extending the period beyond that time only where reasonable justification for such extension could be shown. Since the Department of Revenue did not settle this tax within the period specified by the act, the burden here is upon the department to prove that there were facts and circumstances involved in this case which excused the fiscal officers from settling the tax by the specified year end.

The department must prove that its delay was justified under the facts in this particular case. Instead of settling the tax on or before December 31, 1954, it was not settled by the Department of Revenue until April 9, 1956, and approved by the Auditor General on April 13, 1956. And the only question involved in this case is whether the facts justified the fiscal officers in their extension of the settlement date.

The facts here show that defendant obtained an extension of 60 days under section 704 of The Fiscal Code, 72 PS §704, for the filing of its 1953 franchise tax report. This report was due under section 707 of that code, 72 PS §707, on March 15, 1954, and the report was filed in accordance with the extension on May 15, 1954. This extension reduced by two months the time available to the Department of Revenue in the year 1954 to settle the 1953 franchise tax. There were other circumstances which transpired in 1954 which reduced the period of time that was available to the Department of Revenue to settle the tax in question.

At the end of the year 1954, the taxes of at least 2,500 corporations remained unsettled for years prior to 1953, and a very large number for that year; many of these unsettled taxes involved so-called large corporations. The testimony shows that tax settlements for prior years have a direct bearing on the tax being settled for a given year. For this purpose, the fiscal

officers have developed a practice of pairing reports. Mr. Charles S. Seligman, at the present time Deputy Secretary of Revenue, became Director of Corporation Taxes on February 15, 1955. He testified with respect to pairing of reports as follows:

". . . It is common practice in all tax administrations to pair the current reports or reports of the company which are being made ready for settlement with the prior year report, or the immediately prior year report which have been settled. If the immediately preceding year reports are under protest in any form, either through Petition for Resettlement, Petition for Review or Petition for Refund, considerable delay is occasioned in the settlement of that company's reports because of the prior year protest."

There was pending with the department, when it had under consideration the 1953 franchise tax report, defendant's protest with respect to the 1952 franchise tax report. This witness testified that the pending petition for resettlement of the 1952 report would affect the time for making settlement of the 1953 tax report in the year 1954, since the settlement of the 1952 tax could not be a guide for the settlement of the 1953 tax until the 1952 settlement was determined.

The following facts are pertinent concerning the protest of defendant regarding the 1952 franchise tax. This 1952 tax was settled on May 5, 1954. On June 25, 1954, defendant filed a petition for resettlement of its 1952 franchise tax, and on August 13, 1954, filed an amended petition for resettlement. The resettlement of the 1952 franchise tax was approved by the taxing officers under date of September 22, 1954, and notice of settlement was mailed to defendant on September 29, 1954. It is to be noted that the settlement of the 1952 franchise tax on May 5, 1954, was 10 days prior to the date when defendant filed its report for 1953 franchise tax on May 15, 1954.

Defendant in the exercise of its statutory rights, first in the matter of obtaining a 60-day extension for the filing of its 1953 tax return, and then in the matter of petitioning for resettlement of its 1952 franchise tax, created for the Department of Revenue a circumstance which reduced the time available to the department to settle within the year 1954 the 1953 franchise tax, the year 1954, of course, being the year succeeding that for which the 1953 franchise tax report was made.

There is another circumstance that should be considered. Defendant had 60 days from September 29, 1954, to present a petition for review of the resettlement of the 1952 franchise tax. This resettlement would not then become a finality until this 60-day period had expired, even granting that it was the practice of the Department of the Auditor General to audit the report within that period, Mr. McHale having testified that the Auditor General did not wait for the expiration of that 60-day period.

From a standpoint of administrative practice, we think that the taxing departments were not necessarily bound to wait until the expiration of this 60-day period before undertaking to "pair" the 1952 and 1953 reports. But the fact does remain, however, that the settlement of the 1952 report could not be considered an administrative finality for the purpose of comparing the 1952 with the 1953 report until this period expired. It is to be noted that Mr. Seligman's testimony, inter alia, is that when there is filed a "Petition for Review . . ., considerable delay is occasioned in the settlement . . ." The 60-day period as to defendant's 1952 franchise tax would have expired on November 29, 1954.

These are circumstances which tended to reduce appreciably the time available to the Department of Revenue for the settlement of the 1953 franchise tax. We must then not only consider the reduced time available

to the Department of Revenue to settle the franchise tax for that year; but also bear in mind that as of the end of 1954 there were, according to Mr. Seligman, as many as "twenty-five hundred companies that represented years prior to 1953 unsettled, and certainly a substantial number of 1953 cases similar to this that were unsettled."

We do not intimate that the number of unsettled cases at the end of 1954 in itself would be an excuse for failure to settle the 1953 franchise tax within the limitation fixed in the statute, viz., December 31, 1954, but we do say that where the period of time available to the Department of Revenue to settle the 1953 franchise tax had been reduced by virtue of an extension granted to the taxpayer, and also because the taxpayer exercised its statutory right to protest its 1952 franchise tax settlement; in these circumstances when the Department of Revenue finds itself at the end of the year with a backlog of cases, then all of these factors may tend to show, and we believe here they do tend to show, a reasonable excuse on the part of the Department for not having settled defendant's tax within the year defined in the statute.

The testimony shows that the taxing officers in the Department of Revenue tentatively settled the 1953 franchise tax on December 8, 1955, whereupon inquiry concerning change of corporate net income was initiated by the department on March 7, 1956. Defendant replied on March 13, 1956, that unreported Federal change of corporate net income in 1947 and 1948 would be reported to the Commonwealth within 30 days, and that a Federal examination was in progress for the years 1949 to 1953. Such reports of any Federal change made by the Commissioner of Internal Revenue are required under section 7 of the Corporate Net Income Tax Act, 72 PS §3420g.

After receiving assurances that reports of change would be filed by defendant within 30 days, the 1953 franchise tax report was settled after the expiration of 30 days on April 9, 1956, and approved by the Auditor General on April 13, 1956. Reports of change were thereafter received from defendant on October 15, 1956, showing corrected and increased income in 1947 and 1948 requiring the payment of $1,078.03 covering additional corporate net income tax due for these years. These reports of change to the Commonwealth were due on or before September 27, 1953, which date was 30 days after the final notice was received by defendant of the Federal changes on August 27, 1953.

In other words, defendant had not filed with the Department of Revenue its report of change in accordance with the requirements of section 7 of the Corporate Net Income Tax Act, 72 PS §3420g. And it was only after defendant had assured the department of its intention to file the report of change, if there was any, within 30 days, that the 1953 franchise tax was finally settled after that 30-day period had expired without any report of change being then made.

Mr. Seligman testified that in the settlement of franchise taxes "there is a very substantial relationship" between franchise taxes and corporate net income tax reports. He testified that this relationship "can fall into many areas, but the principal area . . . would be the case of Franchise Reports, of course, with allocation fractions and the allocation fractions on the C.N.I. Report." These fractions are "essentially the same." He further testified: "Any results of Federal examination which may include negligence or even fraud, could have a very substantial bearing on . . . the Franchise Tax Report . . . substantial Federal changes in the company's reported net income frequently have an effect on the reported earnings, both

current and historical, reflected on the . . . Franchise Tax Report."

Defendant had received notice of the Federal change in its 1947 and 1948 income many months before the 1953 franchise tax report was filed. This change was important. Any change, according to Mr. Seligman, may have affected the current statement of earnings, and this particular change certainly did affect the historical statement of income as contained in the 1953 franchise tax report, Commonwealth's exhibit 1.

That there was no space allotted on the department's form for noting this Federal change of income is not of controlling significance. Neither did that form have any place for the six schedules relating to net income that were attached to exhibit I in order to supply full and complete information; defendant nevertheless attached these schedules, presumably in order to supply the department with that information. Likewise, the 1953 franchise tax report should have been clarified by carrying as an addendum to the department's form some reference to the Federal change of income.

The facts in this case, in our opinion, justify the conclusion that there was reasonable excuse on the part of the Department of Revenue in delaying the settlement of the 1953 franchise tax report beyond the date of December 31, 1954, and further that under the facts and circumstances of this case, where defendant had not fully complied with its statutory duty in the matter of reporting changes in its corporate net income as determined by the Federal Bureau of Internal Revenue, it could not complain that the tax was not finally settled until April 13, 1956.

We believe, in accordance with the opinion of Judge Kreider and the Supreme Court in the Allied Building Credits case, that where the year has expired within which The Fiscal Code specifies the tax should be set-

tled, if possible, that then whether there has been an excuse for a delay beyond that year end "is a question that would have to be determined in each case upon its own particular facts", and the burden of proof to justify the delay is upon the Commonwealth. We believe that the Commonwealth has met its burden here in showing that there were present in this case conditions under which it would have been "unreasonable to require the Department of Revenue to act within the required time," that is to say, by the end of the year 1954.

Defendant submitted requests for findings of fact on May 29, 1957. Defendant at the oral argument on May 15, 1957, requested and received permission from the court to file a supplemental brief. This permission hardly included the filing thereafter of requests for findings of fact, which certainly could have been filed in such time that the court en banc at the argument would have had an opportunity to consider them. Some of these requests actually do not pertain to factual matters and are more in the nature of requests for conclusions of law. However, we are answering each of these requests seriatim and have endorsed our answers on these requests as filed. The Commonwealth then also on June 12, 1957, filed requests for findings of fact and conclusions of law. Although we feel that all these requests are belated because the court should have had the benefit of them at the argument, we are nevertheless answering each of them seriatim and have endorsed our answers thereon.

In view of the foregoing, we herewith make the following

### Conclusions of Law

1. Settlements of franchise taxes under section 801(*b*) of The Fiscal Code of April 9, 1929, P. L. 343, as far as possible must be made on or before the end of the year succeeding that year for which the report

is made; such settlements must be made before that succeeding year end unless they cannot within that time be reasonably effectuated.

2. The period of limitation for the settlement of defendant's 1953 franchise tax expired December 31, 1954, unless the taxing officers were excused by extenuating circumstances in this particular case which rendered settlement by that date not reasonably possible within the meaning of section 801 (*b*) of The Fiscal Code.

3. Delay in settlement beyond this date could only be excused where the Commonwealth shows good and sufficient reason for that delay. The burden of proof is on the Commonwealth, the Department of Revenue in this case, to show facts and circumstances which establish good and sufficient reason for delay in settlement of the defendant's 1953 franchise tax beyond December 31, 1954.

4. The Commonwealth has met its burden of proof in this case.

5. The Commonwealth's delay in the settlement of this 1953 franchise tax until April 13, 1956, was justified under the facts in this case, because the time available for the 1954 settlement had been substantially and prejudicially reduced by virtue of the extension granted to defendant for filing its 1953 franchise tax return, and the audit of its earlier 1952 return and the resettlement thereof, and further because defendant unduly delayed the filing of its report of Federal change of its corporate net income which was due September 27, 1953.

6. There was reasonable excuse in the delay of settlement of the 1953 franchise tax return beyond December 31, 1954, and until April 13, 1956.

7. The decision of the Board of Finance and Revenue in refusing to resettle defendant's franchise tax for the year 1953 is affirmed.

8. The entire amount of tax, except interest due the. Commonwealth, having been paid, judgment must be entered in favor of the Commonwealth and against defendant in accordance with the following schedule:

| | |
|---|---|
| Amount of tax claimed by the Commonwealth ...................... (paid in. full) | $5,788.12 |
| Amount of tax claimed to be due by defendant .................... | $4,590.99 |
| | |
| Amount of tax in dispute .......... | $1,197.13 |
| Interest unpaid on settlement ...... | $   83.83 |
| | |
| Total of Commonwealth's claim .... (disputed tax and interest) | $1,280.96 |

For the foregoing reasons, we are of the opinion that defendant is not entitled to prevail in this appeal and that the appeal should be dismissed and judgment entered for the Commonwealth. Accordingly, therefore, we enter this

*Final Order*

And now, July 29, 1957, the action of the Board of Finance and Revenue in refusing defendant's petition for review is sustained, defendant's appeal is dismissed and it is directed that judgment be and hereby is entered in favor of the Commonwealth and against defendant in the amount of $5,788.12, together with interest in the amount of $83.83, unless exceptions be filed to this order within 30 days hereof; and the prothonotary is directed to mark the said judgment satisfied upon payment by defendant of interest in the said sum of $83.83. The prothonotary shall notify the parties hereto or their counsel of this order forthwith.